IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| **ROBERT OWEN SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:22-cv-00023 |
| | ) | |
| **DR. ELAINA RODELA, et al.,** | ) | JUDGE CAMPBELL |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Owen Smith, an inmate at the South Central Correctional Facility (SCCF) in Clifton, Tennessee, filed a pro se Complaint for alleged violation of his civil rights pursuant to 42 U.S.C. § 1983 (Doc. No. 1), a motion for appointment of counsel (Doc. No. 2), and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 5.)

The case is before the Court for ruling on Plaintiff's IFP application and motion, and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED AS A PAUPER

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a) if he satisfies the requirements to proceed IFP established in 28 U.S.C. § 1915(a). Because Plaintiff's IFP application satisfies those requirements and establishes that he is unable to prepay the filing fee, that application (Doc. No. 5) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the

greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e. To determine whether the Complaint states a plausible claim, the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a viable Section 1983 claim, Plaintiff must allege (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff sues Dr. Elaina Rodela and her employer, CoreCivic, Inc., claiming that these Defendants violated his Eighth Amendment right to appropriate medical care in the wake of his diagnosis with skin cancer in 2020. (Doc. No. 1 at 2–3, 13.) He alleges that after receiving that diagnosis, he was scheduled to see a specialist on July 20, 2020, but "refused the appointment because [he] was scared of getting COVID-19, considering that cancer causes your immune system to be weaker." (*Id.* at 13.) Plaintiff's appointment with a cancer specialist was not rescheduled until more than a year later, on October 12, 2021. (*Id.*) The Complaint gives the following description of this appointment, and of a second appointment with a different specialist:

> At this appointment [on October 12, 2021] the specialist informed me that successfully removing the cancer would involve removing part of the left side of my face, because the cancer is on the left side on the jaw line right below the left ear. He told me that I would lose my left ear out of necessity, and stated that he wanted to schedule surgery. The surgery was never scheduled.
>
> On February 17, 2022, I was taken to another specialist in Jackson, TN, Dr. Arnold, who was furious that this cancer area had not been removed, stating that when first diagnosed it could have been removed in the office, but that now it required major surgery. She added more pain medication with specific instructions to the facility

3

> to get this medication filled, and to make sure I didn't miss a dose of the medication, and that the medicine was to be filled as prescribed.

(*Id.*) Eight or nine days later, when Plaintiff still had not received the medications prescribed by Dr. Arnold, he was told by the charge nurse that Dr. Rodela had failed to authorize dispensation of the medication despite multiple attempts to secure such authorization by phone. (*Id.*) The charge nurse then sent an e-mail requesting authorization, and in response, Dr. Rodela claimed to have forgotten to execute the medication authorization. (*Id.* at 13–14.)

Plaintiff was scheduled for surgery on March 8, 2022, but that appointment was cancelled without explanation. (*Id.* at 14.) On April 27, Dr. Rodela informed Plaintiff that "CoreCivic was not going to pay for the surgery, and that Dr. Arnold was no longer taking care of inmates, because CoreCivic had not paid the physician for services rendered." (*Id.*) On May 12, Plaintiff was diagnosed with bilateral rib fractures after complaining of pain in the area; he was told by a nurse that unexplained fractures could be caused by bone cancer. (*Id.*)

Plaintiff alleges that Dr. Rodela is the only physician at SCCF but is rarely there. (*Id.*) He alleges that "CoreCivic is utilizing tele-med physicians to get her 'caught up' on all of her accumulated work." (*Id.*) He claims that "Dr. Rodela could have authorized the surgery much sooner, but she chose not to; and she can rush medical procedures for conditions such as cancer, and she has failed to do so." (*Id.*) Plaintiff alleges that the "cancerous spot is getting bigger, and other similar spots on [his] head appear to be forming." (*Id.*) He claims to have lost 31 pounds in 3 weeks, without any explanation other than the cancer. (*Id.*) He further claims that "[t]he physical pain is breaking through, in spite of the medication, and [his] fear of impending death exacerbates the pain." (*Id.* at 16.) Despite Plaintiff's worsening condition, Dr. Rodela refuses to examine him, leaving his care entirely to "APN Dean." (*Id.*) Meanwhile, CoreCivic refuses to pay for the surgery he needs and staffs the SCCF medical department with insufficient personnel to meet the medical

4

needs of the inmates. (*Id.* at 15.) As relief for the harms he alleges, Plaintiff seeks an award of damages and an injunction requiring CoreCivic to provide for his surgery and future related medical care. (*Id.* at 16–17.)

## C. Analysis

To begin with, there is no question that Defendants are state actors for purposes of Section 1983. A physician who provides medical care for state inmates is a state actor regardless of the public or private nature of her employment. *Carl*, 763 F.3d at 596. Furthermore, though it is a private company, CoreCivic performs the traditional state function of operating a prison and is thus a state actor. *See Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). It cannot be held vicariously liable for constitutional violations committed by its employees, but CoreCivic can be held directly liable under Section 1983 if a corporate policy or custom "was the moving force behind the deprivation of the plaintiff's rights." *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Plaintiff claims that his Eighth Amendment rights have been violated by Defendants' deliberate indifference to his serious medical needs. Deliberate-indifference claims have both an objective and subjective component. The objective component requires that Plaintiff's condition present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If it does, the subjective component requires that Defendants understood yet consciously disregarded the need for medical treatment. *Rhinehart*, 894 F.3d at 738. In failing to provide such treatment, they "must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and . . . must also draw the inference." *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has thus been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

Presuming the truth of the Complaint's allegations that Plaintiff has skin cancer and was recently told by two specialists that he needs surgery—which was initially scheduled but then cancelled after CoreCivic declined to pay for the surgery—Plaintiff's need for treatment is sufficiently, objectively serious. *See Rhinehart*, 894 F.3d at 737 ("[W]hen an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all.") (citations and internal quotation marks omitted).

Regarding the subjective component, Plaintiff alleges that Dr. Rodela delayed in (1) referring him to an outside specialist after his cancer diagnosis; (2) authorizing the pain medication prescribed by Dr. Arnold; and (3) responding to the specialists' recommendation of surgery (the first of which was made in October 2021)—all of which limited Plaintiff's cancer treatment to symptom management by SCCF nurses until late February/early March 2022, when his surgery was scheduled. He further alleges that CoreCivic ultimately declined to authorize and pay for the scheduled surgery despite evidence (including dramatic weight loss, unexplained rib fractures, and exacerbated breakthrough pain) that Plaintiff's cancer is spreading. While "[a] prison doctor's failure to follow an outside specialist's recommendation does not necessarily establish inadequate care," *Rhinehart*, 894 F.3d at 742, "[f]ailure by a jail medical staff to adhere to a prescribed course

6

of treatment may satisfy the subjective component" of deliberate indifference, *Richmond*, 885 F.3d at 939, as may delay or refusal to provide obviously needed treatment for non-medical reasons such as cost savings. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). Further development of the facts may reveal that the treatment decisions at SCCF were reasonable (if unsatisfactory to Plaintiff) in light of the orders and recommendations of the consulting specialists. But for purposes of initial review, Plaintiff's allegations, liberally construed in the light most favorable to him, are sufficient to colorably claim deliberate indifference to serious medical needs.

Accordingly, Plaintiff states a nonfrivolous Eighth Amendment claim against Dr. Rodela, who allegedly failed to adequately attend to his needs as a known cancer patient, and CoreCivic, whose payment policy is alleged to be the moving force behind the cancellation of and failure to reschedule Plaintiff's surgery.

### III. MOTION TO APPOINT COUNSEL

An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel; rather, the appointment of counsel in such cases is a privilege "justified only in exceptional circumstances." *Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003), and *Lavado v. Keohane*, 992 F.2d 601, 606–07 (6th Cir. 1993)). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court, considering the type of case presented and the ability of the plaintiff to represent himself. *Lavado*, 992 F.2d at 604, 606. Evaluation of these factors in turn "generally involves a determination of the complexity of the factual and legal issues involved." *Id.* (internal quotation marks and citation omitted). The exceptional circumstances described above, including what appear to be serious allegations of deliberate indifference to dire medical needs that will require

discovery of information maintained by third parties outside of the prison, warrant the appointment of counsel for Plaintiff.

Accordingly, Plaintiff's Motion for Appointment of Counsel (Doc. No. 2) is **GRANTED**.

## IV. FURTHER ACTION

As explained above, the Court finds that the Complaint states a colorable claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment. The Court further finds that appointment of counsel is justified in this case. Accordingly, the Clerk of Court is **DIRECTED** to retain counsel for Plaintiff from the civil appointment panel. After reviewing the case and consulting with Plaintiff, appointed counsel shall take all further appropriate actions to prosecute this case, including filing and serving an amended complaint as soon as practicable after receiving the appointment and entering an appearance.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE